### KELSEY v. McNAIR.

(Supreme Court, General Term, Fifth Department.   October 23, 1890.)

REFORMATION OF CONTRACT—ASSIGNMENT OF INSURANCE POLICY.

In an action to reform an absolute assignment of two insurance policies, in one of which plaintiff's testatrix was the beneficiary, so as to make it a collateral one only, the evidence showed that the assignee was the agent who issued the policies; that he had paid the premiums for three years, and held the policies as collateral security for the repayment of these advances; that he declined to make further advances, and insisted upon payment, but eventually agreed to take the policies for $500, and to apply the amount on the indebtedness to him. It also appeared that testatrix had executed a separate and absolute assignment of the policy in which she was named as beneficiary. *Held*, that the complaint was properly dismissed.

Appeal from special term, Livingston county.

Action by Otto Kelsey, as administrator of Mary Marsh, against William R. McNair. There was judgment for defendant, and plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*J. B. Adams,* for appellant.    *E. A. Nash,* for respondent.

DWIGHT, P. J.   Although this action has been several times tried, the facts of the case have now for the first time been passed upon under the allegations of the amended complaint, and the trial court has found against the plaintiff on all of those allegations upon which issue was joined by the answer. The conclusion of law that the plaintiff's complaint should be dismissed resulted, necessarily, from the findings of fact, and, consequently, this appeal, which is based upon exceptions to those findings and conclusion, presents only questions of fact for our consideration. The action was for the reformation of an instrument in writing, executed by the original plaintiff (Mrs. Mary Marsh) to the defendant's assignor, (Chauncey W. Gibson,) which purported to transfer to the latter a policy of insurance on the life of Charles H. Marsh, in which Mrs. Marsh, who was the mother of the insured, was named as the beneficiary. The assignment embraced, besides the policy in question, a policy on the life of John R. Marsh, a brother of Charles H., in which the latter was named as a beneficiary. The assignment was absolute in form, and expressed a consideration amounting to $500, consisting of three items of pay-

ment or credit, to be applied upon three specified items of indebtedness of the two brothers to Gibson. It was signed by Charles and John and Mary Marsh, which included both the insured and the two beneficiaries in the two policies, respectively. The reformation sought in this action was to transform the assignment, so far as Mrs. Marsh was concerned, from an absolute to a collateral one, which should purport to be given as collateral security for the payment of the three items of indebtedness, amounting to $500, mentioned therein. The demand for this relief was based upon the allegation that the agreement between the parties was for a collateral, and not for an absolute, assignment, and that the signature of Mrs. Marsh was obtained to the paper as drawn by the false and fraudulent, or mistaken, representation of an alleged agent of Gibson, to the effect that the insurance company would not recognize an assignment of a policy, though collateral in purpose, unless it was made absolute in form.

We do not propose to consider the legal aspects of the case thus presented, nor whether the case has been materially changed in those aspects by an amendment to the complaint made since a former review in the court of appeals. 1 N. E. Rep. 660. We prefer to rest our decision in affirmance of this judgment upon the conclusion at which we have arrived after very careful consideration of the evidence, that the findings of fact of the trial court cannot be disturbed. There are many circumstances of the transaction which render it altogether improbable that Gibson, a creditor of the two Marshes in in a very large amount, should ever have proposed or consented to take an assignment of these policies as collateral security limited to the particular items of indebtedness, mentioned in the assignment. Neither of them was for money then advanced, or for credit thereafter to be given, but all represented small portions of an indebtedness already existing. The first item was the exact amount of an overdraft of Charles Marsh at Gibson's bank; the second was the amount of a mortgage on land which had been deeded by John Marsh to Gibson, and which, it seems, was for the former to pay; and the third (of $35.82) was the balance required to make up the total consideration of $500, after applying the two other sums mentioned, and this balance was to be indorsed on a note of Charles Marsh for $300, held by Gibson. There can hardly be said to have been a conflict of evidence upon the question whether the agreement actually made between the parties who negotiated the transaction was not correctly represented by the instrument which the plaintiff seeks to reform. Charles Marsh had himself procured the policy to be written upon his own life, and had voluntarily named his mother as the beneficiary therein. Gibson, who was the agent who had countersigned and issued both the policies, had advanced all the premiums thereon from their date in 1869 up to the date of the assignment in 1872, and held the policies as collateral securities for the repayment of those advances. When the premium in the last-named year became due, he declined to advance any further premiums, and insisted that the Marshes should either find means to pay the premiums themselves or surrender the policies, and get what they could for them from the insurance company. At the request of Charles he had ascertained from the company that it would pay $175 on the surrender of the policy on his life. This sum was unsatisfactory, and Gibson testifies that he thereupon offered to give $500 for the two policies, and apply the amount on the indebtedness of the brothers to him, to which they agreed. It would seem that the first two items of indebtedness to be paid were selected as amounting very nearly to the sum of $500, and this left the small balance, above mentioned, to be indorsed on the note of $300.

There is undoubtedly more conflict of evidence upon the question whether Mrs. Marsh consented to the absolute assignment of the policy in which she was named as the beneficiary; but there are circumstances which tend strongly to support the findings of the court in that respect. Among them is one to

which no reference is made in the argument for the appellant. It was proved on the trial, and not disputed, that Mrs. Marsh, besides the assignment mentioned in the complaint, executed a separate absolute assignment of this policy to Gibson. This assignment is in the short printed form on the back of or annexed to the policy itself, and recites a nominal consideration. It bears date the same day as the other, and is witnessed by Charles Marsh. The court finds that this assignment was executed by Mrs. Marsh, and delivered to Gibson before the other was drawn; and this finding is well supported by the testimony of Gibson, which is substantially uncontradicted on that point. He testifies that at the time the arrangement was proposed by him to the Marsh brothers he left with them the policy on the life of Charles for them to obtain the signature of their mother to the assignment, and that, when he went to Avon, on the 23d of May, to close the transaction, they returned him the policy with the assignment executed. It is true that Mrs. Marsh, in answer to a direct question of her counsel, which coupled the two assignments together, testifies that she signed them at the request of Hosmer, who was the alleged agent of Gibson; but throughout her narrative of the conversation and transaction with Hosmer, she speaks only of one assignment and one paper. Hosmer himself swears positively that he took only one paper to Mrs. Marsh to sign, and that she executed only one, and that that was the assignment which contained the items of indebtedness. The fact must, therefore, be taken as established, for all the purposes of this review, that when Mrs. Marsh executed the assignment to which this action relates, she had already executed, in presence of her son Charles, another separate and absolute assignment of the policy in which she was the assured. There is no evidence nor any allegation in the complaint of any fraud or mistake in connection with that assignment. Gibson testifies that he drew the longer assignment, which embraced both the policies, in order to show the precise nature of the transaction, and the application to be made by him of the consideration for both assignments; that he drew it in duplicate, and executed one part himself,—which he gave to the Marshes,—and retained the other executed by the three other parties to the transaction. There is nothing in this case which throws the burden upon the defendant to disprove fraud or mistake. There is no presumption of either for the purpose of contradicting the plain tenor of an instrument in writing, the meaning of which Mrs. Marsh herself testifies was perfectly understood by her. Neither Gibson nor Hosmer, if he was Gibson's agent, stood in any confidential relation to the other party to the transaction which raises any presumption of undue influence. The case was one for the application of the rule, which has few exceptions, that he who alleges fraud as a basis of an action must prove it by a clear preponderance of the credible evidence in the case. Upon the whole case we conclude, as before intimated, that the findings of the court at special term must be taken as conclusive of the facts as found, and that upon those facts the complaint was properly dismissed. Judgment affirmed, with costs. All concur.